# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

LONNIE SLOAN,
   Petitioner,

v.                                                    Case No. 5:20-cv-454-KKM-PRL

SECRETARY, DEPARTMENT
OF CORRECTIONS,
   Respondent.

_____

## ORDER

Sloan, a Florida prisoner, timely[1] filed a pro se Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 challenging his state court convictions based on the alleged insufficiency of the State's evidence and the alleged failures of his trial counsel. (Doc. 1.) Having considered the petition, (*id.*), the response in opposition, (Doc. 11), and the reply, (Doc. 14), the petition is denied. Because reasonable jurists would not disagree, Sloan is also not entitled to a certificate of appealability.

_____

[1] A state prisoner has one year from the date his judgment becomes final to file a § 2254 petition. *See* § 2244(d)(1). This one-year limitation period is tolled during the pendency of a properly filed state motion seeking collateral relief. *See* § 2244(d)(2). Sloan's conviction for one count was reversed on appeal, and he was resentenced accordingly. Solely for the purpose of this timeliness determination, the Court will assume that Sloan's judgment became final 90 days after the conclusion of his appeal following the resentencing, on September 23, 2019. (Doc. 12-2, Ex. P); *see Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002). After 55 days of untolled time passed, Sloan filed his postconviction motion on November 18, 2019. (Doc. 12-2, Ex. R, p. 3.) The motion remained pending until the state appellate court's mandate issued on August 11, 2020. (Doc. 12-2, Ex. W.) Sloan's § 2254 petition was filed 33 days later, on September 14, 2020. (Doc. 1, p. 1.) As only 88 days of untolled time elapsed, Sloan's petition is timely.

I.     BACKGROUND

A. Procedural Background

A state court jury convicted Sloan of aggravated assault of a law enforcement officer; resisting a law enforcement officer with violence; battery on a law enforcement officer; possession of burglary tools; and carrying a concealed weapon by a felon. (Doc. 12-2, Ex. A, pp. 36-40.) The jury found him not guilty of loitering and prowling. (*Id.*, p. 41.) The trial court sentenced him to an overall term of 45 years in prison. (*Id.*, pp. 151-53.)

Sloan's only argument on direct appeal challenged the conviction for possession of burglary tools. (Doc. 12-2, Ex. C.) The state appellate court directed the state trial court to vacate Sloan's conviction for possession of burglary tools and resentence him accordingly. *Sloan v. State*, 248 So.3d 290 (Fla. 5th DCA 2018).

On remand, the state trial court vacated the conviction and sentence for possession of burglary tools, and stated that the sentences previously imposed for all other convictions "shall stand." (Doc. 12-2, Ex. G, p. 476.) Sloan had received a five-year sentence for possession of burglary tools, consecutive to the sentences for his other convictions. (Doc. 12-2, Ex. A, p. 152.) Therefore, his overall term of imprisonment was reduced to 40 years. (Doc. 12-2, Ex. G, pp. 476-77.) The state appellate court per curiam affirmed on appeal from resentencing. (Doc. 12-2, Ex. P.)

Sloan's motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 was denied. (Doc. 12-2, Ex. R.) The state appellate court per curiam affirmed the denial. (Doc. 12-2, Ex. T.)

## B. Evidence Presented at Trial

### 1. The State's Evidence

On the night of December 18, 2016, Deputy Austin Fisher of the Citrus County Sheriff's Office was in his patrol vehicle and backed into a preserve area with his lights off. (Doc. 12-2, Ex. B, pp. 39-40.) Sloan passed by on a bicycle. (*Id.*, p. 40.) Deputy Fisher observed that Sloan was in "full camo, camo backpack, no lights on his bicycle, running down the middle of the roadway." (*Id.*) Deputy Fisher turned on his vehicle's lights, followed the bicycle for a short distance, and commenced a traffic stop for not having lights on the bicycle at dark. (*Id.*, p. 41.) Deputy Fisher then turned on his overhead red and blue lights. (*Id.*, p. 42.) Sloan looked back, saw the patrol vehicle, turned back, and pedaled faster. (*Id.*) Deputy Fisher sounded his siren once or twice but Sloan did not turn around. (*Id.*) Deputy Fisher used his vehicle's P.A. system to advise Sloan to pull over. (*Id.*, pp. 42-43.) Sloan looked back but kept pedaling. (*Id.*, p. 43.) He crossed the patrol vehicle's path, went into a residential back yard, crashed his bicycle, and ran into the woods. (*Id.*, p. 43.)

Deputy Fisher could not reach backup because of a poor radio signal. (*Id.*, p. 44.) He chased Sloan on foot and saw Sloan hide behind some bushes and put his hands in a

"defensive position." (*Id.*, pp. 44-45.) As Deputy Fisher described it, Sloan threw up his hands, clenched his fists, and hunched over. (*Id.*, p. 45.) Deputy Fisher directed Sloan to lie down and put his hands to the side, but Sloan did not comply. (*Id.*, p. 46.) Deputy Fisher saw that Sloan appeared to reach for something in his waistband. (*Id.*, p. 46.) Deputy Fisher drew his taser and told Sloan that if he did not show his hands or get on the ground, he would be tased. (*Id.*, p. 47.) When Sloan ignored Deputy Fisher, he deployed the taser but it did not work. (*Id.*)

Sloan charged at Deputy Fisher and hit him. (*Id.*, p. 48.) Deputy Fisher dropped his taser and struck Sloan in the face, causing Sloan to fall back into some bushes. (*Id.*, pp. 48-49.) At this point, Deputy Fisher made connection over his radio for assistance. (*Id.*, p. 50.) Deputy Fisher directed Sloan to roll over and put his hands and feet out, but Sloan did not do so. (*Id.*) Sloan got up and started running away; when Sloan stopped and turned, Deputy Fisher saw him take a fixed-blade knife from his waistband and hold his hand out in a "fighting posture." (*Id.*, p. 51.) Deputy Fisher pulled out his firearm. (*Id.*, p. 54.) Deputy Fisher told Sloan that if he did not drop the knife, he would be shot. (*Id.*, p. 55.) Sloan threw his knife to the side, turned around, and ran. (*Id.*) Deputy Fisher re-holstered his gun, picked up the taser, chased Sloan, and tased him. (*Id.*) The taser immobilized Sloan. (*Id.*) Deputy Fisher directed Sloan to put his hands and feet out, but Sloan started crawling away and reached for his waistband again. (*Id.*, p. 56.)

4

Meanwhile, an off-duty Sumter County Sheriff's Deputy who lived nearby named William Anderson woke up to the sound of a car coming through his yard. (*Id.*, p. 111.) He got out of bed, picked up his identification card and gun, and went outside. (*Id.*) His brother-in-law Ronnie Robbins, who was at his house, came with him. (*Id.*, p. 113.) Deputy Anderson heard a taser and a deputy trying to control a person who was "actively violently resisting" in the woods. (*Id.*, p. 112.) Robbins heard Deputy Fisher saying to stop resisting and to drop the knife. (*Id.*, p. 104.) Robbins and Deputy Anderson reached Deputy Fisher as Sloan was starting to crawl away after being tased. (*Id.*, p. 56.) Deputy Anderson identified himself, and Deputy Fisher said he needed help. (*Id.*, pp. 56, 113.)

Deputy Fisher gave his taser to Deputy Anderson. (*Id.*, pp. 57, 105, 107, 114.) Deputy Fisher and Robbins approached Sloan. (*Id.*, p. 58.) They pushed him back down to his stomach and tried to put his hands behind his back to handcuff him. (*Id.*) Sloan again reached for his waistband. (*Id.*, pp. 58, 107, 114-15.) When Sloan tried to get up, Deputy Anderson tased him, and Deputy Fisher handcuffed Sloan while he was immobilized by the taser. (*Id.*, pp. 59, 115-16.) Deputy McGill of the Citrus County Sheriff's Office and other backup officers then arrived. (*Id.*, p. 60.) Officers brought Sloan to the patrol vehicle, where Deputy Fisher found brass knuckles in Sloan's right pocket. (*Id.*, pp. 60-61.) Police also recovered a BB pistol from the woods. (*Id.*, pp. 79-80.)

## 2. The Defense's Evidence

Sloan testified on his own behalf to the following events that evening. Sloan was riding his bicycle to visit his friend Jessie Miller and then continue to a Circle K to get Skittles and Dr. Pepper for his fiancée. (*Id.*, p. 147.) He wore camouflage because he had been fishing and frog gigging that evening and his fishing knife was in his waist. (*Id.*, pp. 148-50, 158.) A bungee cord held a flashlight to the front of his bicycle. (*Id.*, pp. 161-62.) A headlamp with red and white lights was on the tail reflector. (*Id.*, p. 162.) Both lights were on. (*Id.*)

When Deputy Fisher pulled behind Sloan and activated his vehicle's lights and sirens, Sloan thought that Deputy Fisher wanted to go around him. (*Id.*, p. 166.) Sloan moved over and motioned for the vehicle to pass, but instead, Deputy Fisher pulled up beside him with the door ajar. (*Id.*, pp. 166-67.) Sloan was afraid Deputy Fisher would hit him with his car door. (*Id.*, p. 167.) Deputy Fisher, who was angry and cursing at Sloan, cut in front of the bicycle and nearly hit Sloan with the open vehicle door. (*Id.*, p. 167-69.)

Deputy Fisher turned his car around and Sloan traveled off of the road because he was scared. (*Id.*, p. 173.) When Deputy Fisher caught up to Sloan, he tased him, repeatedly hit him, and threatened to blow his brains out. (*Id.*, pp. 179-82.) Sloan was on the ground the entire time after his bicycle crashed and he never resisted Deputy Fisher. (*Id.*, p. 180-83.) Sloan did not get up and pull a knife on Deputy Fisher. (*Id.*, p. 181.)

## II.   <u>STANDARD OF REVIEW UNDER SECTION 2254</u>

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief under the AEDPA can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "The power of the federal courts to grant a writ of habeas corpus setting aside a state prisoner's conviction on a claim that his conviction was obtained in violation of the United States Constitution is strictly circumscribed." *Green v. Sec'y, Dep't of Corr.*, 28 F.4th 1089, 1093 (11th Cir. 2022).

Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of § 2254(d)(1), the phrase "clearly established Federal law" encompasses the holdings only of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). This section

"defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court." *Id.* at 404. First, a decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413.

Second, a decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. As a result, to obtain relief under the AEDPA, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that "[t]he state court's application of

8

clearly established federal law must be objectively unreasonable" for a federal habeas petitioner to prevail and that the state court's "clear error" is insufficient).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). But the habeas court is "not limited by the particular justifications the state court provided for its reasons, and [it] may consider additional rationales that support the state court's determination." *Jennings v. Secretary, Fla. Dep't of Corr.*, 55 F.4th 1277, 1292 (11th Cir. 2022). When the relevant state-court decision is not accompanied with reasons for the decision—such as a summary affirmance without discussion—the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192. The state may "rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Id.*

For purposes of § 2254(d)(2), "it is not enough to show that 'reasonable minds reviewing the record might disagree about the finding in question.' " *Brown v. Davenport*, 142 S. Ct. 1510, 1525 (2022) (quotations omitted). "An unreasonable determination of the facts occurs when the direction of the evidence, viewed cumulatively, was too powerful to

conclude anything but the petitioners factual claim." *Teasley v. Warden, Macon State Prison*, 978 F.3d 1349, 1355 (11th Cir. 2020) (internal quotation marks and alterations omitted). A state court's findings of fact are presumed correct, and a petitioner can rebut the presumption of correctness afforded to a state court's factual findings only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Even where a petitioner succeeds in rebutting the presumption, he must show that the state court's decision is "based on" the incorrect factual determination. *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1035 (11th Cir. 2022). This is because a state court decision may still be reasonable "even if some of the state court's individual factual findings were erroneous—so long as the decision, taken as a whole, doesn't constitute an 'unreasonable determination of the facts' and isn't 'based on' any such determination." *Id.* (quoting *Hayes v. Sec'y, Fla. Dep't of Corr.*, 10 F.4th 1203, 1224–25 (11th Cir. 2021) (Newsom, J., concurring)).

In addition to satisfying the deferential standard of federal court review of a state court adjudication, a federal habeas petitioner must exhaust his claims by raising them in state court before presenting them in a federal petition. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). A petitioner satisfies this exhaustion requirement if he fairly presents

the claim in each appropriate state court and alerts that court to the federal nature of the claim. *Ward v. Hall*, 592 F.3d 1144, 1156 (11th Cir. 2010).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A petitioner shows cause for a procedural default when he demonstrates "that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). "A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.*

## III.   INEFFECTIVE ASSISTANCE OF COUNSEL

Sloan brings claims for ineffective assistance of trial counsel under the Sixth Amendment. Under the well-known, two-part standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), to succeed, he must show both deficient performance by his counsel and prejudice resulting from those errors. *Id.* at 687.

11

The first part "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The lynchpin of this analysis is whether counsel's conduct "was reasonable considering all the circumstances." *Id.* at 688. A petitioner establishes deficient performance if "the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. A court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

The second part requires showing that the deficient performance prejudiced the defense. *Id.* at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially

higher threshold.' " *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Consequently, federal petitioners rarely prevail on claims of ineffective assistance of counsel because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (quotation and citations omitted).

## IV.   ANALYSIS

### A. Ground One

Sloan argues that the State's evidence was insufficient to support his convictions for aggravated assault of a law enforcement officer and resisting a law enforcement officer with violence. An element of aggravated assault of a law enforcement officer is that the officer "is engaged in the lawful performance of his . . . duties." § 784.07(2), Fla. Stat. Similarly, an element of resisting a law enforcement officer with violence is that the officer is "in the lawful execution of any legal duty." § 843.01, Fla. Stat. Sloan contends that the evidence did not establish that Deputy Fisher was engaged in the lawful performance or execution of his duties because the traffic stop and detention were unlawful.

As an initial matter, Sloan does not allege a federal violation in Ground One. Although he argues that the state court's decision was contrary or involved an unreasonable application of clearly established federal law, he does not identify such federal law or cite any federal constitutional provision. (Doc. 1, p. 5.) Therefore, the claim is not cognizable

on federal habeas review. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("[A] habeas petition grounded on issues of state law provides no basis for habeas relief.").

Even if the § 2254 claim is liberally construed as alleging a federal due process violation, *see Jackson v. Virginia*, 443 U.S. 307 (1979), it is procedurally barred. Sloan challenged the sufficiency of the evidence to support these convictions on appeal from his resentencing. (Doc. 12-2, Ex. J.) But Sloan did not allege any federal due process claim. (*Id.*) While he cited federal law in arguing that the stop was unlawful, Sloan did not allege that his conviction based on insufficient evidence violated his federal rights. (*Id.*)

Sloan cannot return to state court to raise the federal due process challenge in an untimely appeal. *See* Fla. R. App. P. 9.140(b)(3) (stating that a notice of appeal must be filed within 30 days of rendition of the sentence). Although a state court would dismiss a federal due process claim on this procedural basis, the claim is technically exhausted. State-court remedies are exhausted "when they are no longer available, regardless of the reason for the unavailability." *Shinn v. Ramirez*, 142 S.Ct. 1718, 1732 (2022) (quoting *Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006)). But any federal due process claim is procedurally defaulted because it was "not presented to the state courts 'consistent with [the State's] own procedural rules.' " *Ramirez*, 142 S.Ct. at 1732 (quoting *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)). Sloan has not established that an exception applies to excuse the default.

14

Alternatively, even assuming that the claim Sloan raised on appeal from resentencing was sufficient to present a federal due process claim to the state appellate court, the federal due process claim is still defaulted for failure to raise it in accordance with established state procedures. *See id*; *see also Harris v. Reed*, 489 U.S. 255, 262 (1989) (stating that a state court's "adequate and independent finding of procedural default will bar federal habeas review of the federal claim . . . .").

In his appellate brief filed after the resentencing proceeding, Sloan challenged the convictions for aggravated assault on a law enforcement officer and resisting a law enforcement officer. This challenge should have been brought on direct appeal following the trial—not on appeal from resentencing. The state trial court made no ruling concerning these convictions at resentencing. (Doc. 12-2, Ex. G, pp. 467-79.) Although Sloan attempted to argue about the trial proceedings, the state trial court made clear that the only matter to be addressed at the resentencing hearing was vacating the conviction and sentence for possession of burglary tools in accord with the appellate court's decision. (*Id.*, pp. 474-79.) In addition, the state trial court explained that the sentences previously imposed for the convictions other than possession of burglary tools "shall stand." (*Id.*, p. 476.) Thus, there was no ruling during the resentencing proceeding upon which to base an appeal challenging Sloan's other convictions. *See, e.g.*, *Braddy v. State*, 111 So.3d 810, 838 (Fla.

15

2012) ("Because Braddy failed to obtain a clear ruling on his objection, he failed to preserve the issue for appeal.").

Sloan had an earlier opportunity to challenge the convictions for aggravated assault on a law enforcement officer and resisting a law enforcement officer after the trial. Sloan contends that he could not challenge these convictions until they were final and that they did not become final until after resentencing. Sloan's argument is unavailing. The purpose of his direct appeal was to present any available challenge to his convictions and sentences as they stood following the trial. *See Childers v. State*, 782 So.2d 946, 947 (Fla. 4th DCA 2001) ("Appellant's challenge to the sufficiency of the evidence was an issue for direct appeal . . . ."). There was no guarantee of any resentencing proceeding or any other favorable result of the direct appeal.

Accordingly, Sloan's challenge to the sufficiency of the evidence for his convictions for aggravated assault of a law enforcement officer and resisting a law enforcement officer is procedurally defaulted. Because Sloan does not establish that an exception applies to overcome the default, the claim is barred from review.

### B. Ground Two

Sloan argues that trial counsel was ineffective for not calling as witnesses Deputy Tommy McGill, Jessie Miller, and Tammy Short.

### 1. Deputy McGill

Deputy McGill was among the backup officers who responded to Deputy Fisher's call for assistance. Sloan contends that Deputy McGill would have given testimony that contradicted Deputy Fisher's testimony. First, Sloan contends that Deputy McGill would have testified that Deputy Fisher gave him—not off-duty Deputy Anderson—the taser. Second, Sloan states that Deputy McGill would have testified that Deputy Fisher handcuffed Sloan without any assistance and that Sloan did not resist. Third, Sloan alleges that Deputy McGill would have testified that he assisted in pat searching Sloan, and that Sloan had nothing in his pockets or on his person other than his backpack and its contents. Fourth, Sloan states that Deputy McGill also would have testified that he collected evidence and spoke with witnesses but that he never saw or talked to Ronnie Robbins and that Robbins was not present for or involved with the arrest.

The state court concluded that Deputy McGill's statements did not refute Deputy Fisher's testimony and would not have benefitted Sloan. (Doc. 12-2, Ex. R, pp. 27-28.) The state court therefore found that counsel did not perform deficiently by deciding not to call Deputy McGill and that Sloan failed to show that the testimony would result in a different outcome. (*Id.*, p. 28.)

Sloan does not show that the state court's decision was unreasonable. Deputy McGill testified at his deposition that he responded to Deputy Fisher's call for assistance.

(Doc. 12-2, Ex. R, pp. 39-40.) Deputy McGill testified that when he arrived, he "observed Deputy Fisher to have the subject at Taser" and observed "an off-duty Sumter County Sheriff's deputy," presumably Deputy Anderson, with a firearm. (*Id.*, p. 40.) Deputy McGill testified that Deputy Fisher handed him the taser and told him to "keep [Sloan] at Taser." (*Id.*) He also testified that by the time he arrived, Sloan was on the ground and any altercations had already occurred. (*Id.*, pp. 40-42.) Deputy McGill took photographs of items found in the woods and in Sloan's backpack. (*Id.*, pp. 42-43.)

Although there is some variation in Deputy McGill's and Deputy Fisher's recollections, Sloan fails to show that counsel was ineffective for not calling Deputy McGill. Deputy McGill's deposition testimony does not establish that Deputy Fisher handed the taser to him instead of to Deputy Anderson. Deputy Fisher, Deputy Anderson, and Ronnie Robbins gave consistent testimony that Deputy Fisher gave Deputy Anderson the taser. (Doc. 12-2, Ex. B, pp. 57-58, 106-07, 114.) It also appears from this testimony that Deputy Fisher gave Deputy Anderson the taser before Deputy McGill arrived. Indeed, as Deputy McGill stated that he did not arrive until after any altercation occurred, his testimony also leaves open the possibility that Deputy Fisher gave Deputy Anderson the taser earlier, before Deputy McGill arrived.

Deputy McGill also testified that after Deputy Fisher gave him the taser, Deputy Fisher handcuffed Sloan and led him from the woods. (Doc. 12-2, Ex. R, pp. 40-41.) But

contrary to Sloan's assertion, Deputy McGill did not testify that Sloan did not resist, or that Deputy Fisher did not need any assistance. (*Id.*) Deputy McGill further testified that he searched Sloan's left pockets and that to his knowledge, nothing was found on Sloan's person. (*Id.*, p. 42.) But Deputy Fisher testified that he removed the brass knuckles from Sloan's right pocket. And although McGill testified that he photographed evidence at the scene, he did not state definitively that no items were found on Sloan's person. Rather, he stated that "to [his] knowledge," nothing was recovered from Sloan's person. (*Id.*)

Deputy McGill testified that Deputy Fisher and Deputy Anderson were present but that, to his knowledge, no one else was there. (*Id.*, p. 41.) He came to this conclusion "[b]ecause the only person [he] spoke to after that that was involved, was the Sumter County deputy who identified himself." (*Id.*) His statements, conditioned on his personal knowledge, are insufficient to show that, contrary to the testimony of Deputy Fisher, Deputy Anderson, and Robbins, Robbins was not present and was not involved in this incident before backup arrived to assist Deputy Fisher. Sloan fails to show a reasonable probability of a different outcome at trial even if Deputy McGill testified. Whether items were found on Sloan's person may have been relevant to the charge of possession of burglary tools, but that conviction was vacated. Sloan does not establish that Deputy McGill's testimony about the recovery of items from his person, or any of the other identified matters—to whom Deputy Fisher gave his taser after Deputy McGill arrived, whether

Deputy Fisher handcuffed Sloan and led him from the woods, and whether Robbins was present after Deputy McGill arrived—would have affected the outcome of trial as to the remaining convictions. To the extent Fisher may intend to claim that Deputy McGill's testimony would have impacted the overall credibility of the witnesses such that the jury's decision would have been different, this claim is too speculative to warrant federal habeas relief. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating that a petitioner's "unsupported allegations" that are "conclusory in nature and lacking factual substantiation" cannot sustain an ineffective assistance claim).

Sloan has not shown that counsel performed deficiently for not calling Deputy McGill or that he suffered resulting prejudice. As he does not show that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination, he is not entitled to relief on this claim.

### 2. Tammy Short and Jessie Miller

Sloan contends that Tammy Short would have testified that Sloan was going to the store to buy her Skittles and Dr. Pepper because these foods are "what [Short] likes to have during the critical stage of" her illness. (Doc. 1, p. 7.) Sloan asserts that Miller would have testified that Sloan was traveling to Miller's house, where the two had planned to meet.

The state court found that counsel was not deficient for failing to call Miller and Short because they were not present during the incident and "would not have provided a

defense to the charges." (Doc. 12-2, Ex. R, p. 28.) The state court further found that Sloan

failed to show that the witnesses' testimony would have produced a different outcome. (*Id.*)

Sloan does not show that the state court unreasonably denied this claim. Even if Miller

and Short testified to their beliefs about why Sloan was riding his bicycle and where he was

going, as the state court noted, these witnesses were not present during the relevant events.

Sloan does not establish a reasonable probability that they would have offered any evidence

that would have changed the outcome of the trial. He does not show that the state court's

denial of his claim involved an unreasonable application of *Strickland* or was based on an

unreasonable factual determination. Sloan is not entitled to relief on Ground Two.

## C. Ground Three

Sloan asserts that trial counsel was ineffective for presenting an inadequate motion

for judgment of acquittal on the counts of aggravated assault of a law enforcement officer,

resisting a law enforcement officer with violence, and battery on a law enforcement officer.

Sloan asserts that counsel should have argued that Deputy Fisher was not engaged in the

lawful performance of his duties. An element of both aggravated assault of a law

enforcement officer and battery on a law enforcement officer is that the officer "is engaged

in the lawful performance of his . . . duties." § 784.07(2), Fla. Stat. An element of resisting

a law enforcement officer with violence is that the law enforcement officer is "in the lawful

execution of any legal duty." § 843.01, Fla. Stat.

The state court denied Sloan's claim, finding that Deputy Fisher was in lawful execution of his duties and there was no evidence that the stop was illegal. (Doc. 12-2, Ex. R, p. 29.) Accordingly, the state court found that trial counsel's argument supporting the motion for judgment of acquittal was sufficient. (*Id.*)

Sloan does not show that the state court unreasonably denied his claim. A Florida trial court "should not grant a motion for judgment of acquittal unless the evidence, when viewed in a light most favorable to the State, fails to establish a prima facie case of guilt." *State v. Hawkins*, 790 So.2d 492, 495 (Fla. 5th DCA 2001). Here, Sloan focuses on an element of each identified offense that requires the State to prove that the officer is in the lawful performance or execution of his duty. "An officer is engaged in the performance of his official duties when acting within the scope of his employment." *State v. A.R.R.*, 113 So.3d 942, 944 (Fla. 5th DCA 2013).

An officer may conduct a traffic stop based on an individual's riding a bicycle without a light after sunset. Florida law requires that "[e]very bicycle in use between sunset and sunrise shall be equipped with a lamp on the front exhibiting a white light visible from a distance of at least 500 feet to the front and a lamp and reflector on the rear each exhibiting a red light visible from a distance of 600 feet to the rear." § 316.2065(7), Fla. Stat.; *see Montanez v. City of Orlando*, 678 F. App'x 905 (11th Cir. 2017) (stating that a police officer was entitled to stop a bicyclist riding a bicycle without a light after dark

22

because there was probable cause to believe the bicyclist was violating a civil traffic law); *Jones v. State*, 279 So.3d 342, 345 n.5 (Fla. 5th DCA 2019) ("[A] law enforcement officer may stop a driver when there exists an objective basis that the driver committed a traffic infraction." (citing *Whren v. United States*, 517 U.S. 806, 812 (1996))). The evidence, taken in the light most favorable to the State, shows that Sloan was riding a bicycle without a light after dark. Thus, Sloan fails to show that the traffic stop was unlawful.

The evidence, taken in the light most favorable to the State, also shows that Sloan realized Deputy Fisher initiated a traffic stop but that Sloan refused to stop. Although Sloan testified that he thought Deputy Fisher wanted to pass him when Deputy Fisher activated his lights and turned on the siren, Deputy Fisher testified that he used his P.A. system to advised Sloan to pull over. Further, Deputy Fisher testified that after he gave this directive, Sloan looked back at him but kept pedaling. A person must comply when a police officer initiates a traffic stop. *See* § 316.072(3), Fla. Stat. (stating that it is "unlawful and a misdemeanor of the second degree . . . for any person willfully to fail or refuse to comply with any lawful order or direction of any law enforcement officer . . . .").

Sloan fails to show that Deputy Fisher was not acting in the lawful execution of his duty by pursuing him when he failed to stop. At that point, Deputy Fisher had probable cause to believe that Sloan had committed an offense. *See Lee v. Ferraro*, 284 F.3d 1188, 1194-95 (11th Cir. 2002) ("[I]f an officer has probable cause to believe that an individual

has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." (quoting *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001))).

The evidence, taken in the light most favorable to the State, also shows that as Sloan continued to flee from Deputy Fisher after he refused the lawful traffic stop, Sloan assaulted and battered Deputy Fisher. Therefore, Sloan fails to show that Deputy Fisher that Deputy Fisher was not engaged in the lawful execution of a legal duty regarding the identified offenses.

Sloan points out that he was not cited or arrested for riding a bicycle without lights, apparently suggesting that the lack of a charge or citation shows that the stop was unlawful. But riding a bicycle without lights is a noncriminal traffic infraction. *See* § 316.2065(19), Fla. Stat. And the fact that Sloan was not issued a citation does not establish the traffic stop's unlawfulness. Finally, while Sloan asserts that Deputy Fisher never articulated an intent to arrest Sloan, he fails to show that Deputy Fisher was required to do so to render the performance of his duties lawful.

Thus, Sloan fails to show that the state court unreasonably determined that counsel was ineffective when he did not argue in moving for a judgment of acquittal that the State failed to prove that Deputy Fisher was engaged in the lawful performance or execution of his duties. Because Sloan does not show that the state court unreasonably applied

*Strickland* or unreasonably determined the facts in denying his claim, he is not entitled to relief on Ground Three.

### D. Ground Four

Sloan contends that trial counsel was ineffective for failing to investigate and introduce his bicycle into evidence. Sloan argues that light fixtures were on the front and back of the bicycle. Therefore, he contends, presenting the bicycle would have shown that Deputy Fisher had no valid basis to stop him.

The state court found that presenting the bicycle would not have contradicted or disproven Deputy Fisher's testimony. (Doc. 12-2, Ex. R, p. 30.) The state court noted that the stop was based on the lights not being on, but that Sloan testified about the lights and that flashlights were admitted into evidence. (*Id.*) The state court also found that Sloan failed to show a reasonable probability of a different outcome had counsel presented the bicycle in the light of the "[o]verwhelming" evidence of guilt. (*Id.*)

The state court did not unreasonably deny Sloan's claim. Showing that lights were affixed to the bicycle does not establish whether these lights were turned on when Sloan rode the bicycle past Deputy Fisher. Moreover, even if admitted, the jury was free to credit Deputy Fisher's testimony over Sloan's testimony about whether the lights were activated. Sloan has not shown that, had counsel admitted the bicycle, the jury would have reached a different outcome and he certainly has not shown that the state court did not unreasonably

conclude likewise. Sloan does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim. Ground Four warrants no relief.

### E. Ground Five

Sloan argues that trial counsel was ineffective for failing to impeach Deputy Fisher with prior statements made "in his original arrest affidavit, and arrest report" that contradicted his trial testimony. Sloan states that in his arrest affidavit, Deputy Fisher noted that there was no weapon involved or seized, but also stated that the fixed blade knife was recovered still in a leather sheath. Sloan states that in his arrest report, prepared three days later, Deputy Fisher stated "that the knife was pulled from the sheath and thrown in the woods as [Sloan] ran away from him." (Doc. 1, p. 12.) Sloan contends that these statements are inconsistent with Deputy Fisher's trial testimony. At trial, Deputy Fisher testified that, after he first tased Sloan and directed him to put his hands and feet out, Sloan got up and started running away before stopping, turning, and taking a knife out of his waistband, and then putting his hand out in a fighting posture. (Doc. 12-2, Ex. B, pp. 50-51.) Deputy Fisher testified that when he pulled out his firearm, Sloan threw the knife to the side and ran. (*Id.*, pp. 54-55.) Deputy Fisher identified the knife when it was entered into evidence, stating, "[t]hat's the knife that he drew from his waistband that night along with the broken sheath, the leather sheath." (*Id.*, p. 52.)

The state court denied Sloan's claim, finding it to be refuted by the record. (Doc. 12-2, Ex. R, p. 30-31.) The state court found that counsel did impeach Deputy Fisher with his previous statements. (*Id.*) The state court referred to impeachment of Deputy Fisher with his arrest affidavit and noted that counsel "specifically referred to [Deputy Fisher's] report and the inconsistencies between his testimony and the report." (*Id.*, p. 31.) The state court also cited portions of the arrest affidavit and stated that, on cross-examination, Deputy Fisher conceded that his report did not state that Sloan took an "aggressive stance," which Deputy Fisher testified to at trial. (*Id.*)

In his reply, Sloan asserts that the state court's ruling was unreasonable because counsel cross-examined Deputy Fisher with his arrest report, not the arrest affidavit. He states that the arrest affidavit lacks "mention of any knife being pulled or brandished by" Sloan, contains no statement that a weapon was seized or involved, and states that the knife "was 'still in its leather sheath' and was recovered in that unused and opened condition at the scene." (Doc. 14, p. 11.)

Sloan has not shown that the state court's ruling was unreasonable. As the state court noted, counsel did cross-examine Deputy Fisher about inconsistencies in his trial testimony and his previous statements about the knife. (Doc. 12-2, Ex. B, pp. 87-92.) Specifically, Deputy Fisher agreed that he wrote in his report that Sloan pulled the knife as he was running away. (*Id.*, pp. 88-89.) And he agreed that he did not state in his report

that Sloan took an aggressive stance, but that it would have been important to include that information. (*Id.*, p. 89.)

Counsel also cross-examined Deputy Fisher about recovering the knife. Counsel asked if the knife was found in the sheath. (*Id.*, pp. 91-92.) While holding the knife and sheath, Deputy Fisher responded that "[i]t was found with this part like that" and that "I think the snap is worn out. It was like this, lying next to it like that." (*Id.*, p. 92.)

During this portion of the cross-examination, counsel repeatedly referred to Deputy Fisher's report. (*Id.*, pp. 87-92.) The state postconviction court addressed both the affidavit and report, and may have referred to them interchangeably. (Doc. 12-2, Ex. R, pp. 30-31.) The state postconviction court attached Deputy Fisher's arrest affidavit to its order of denial, but a separate arrest report is not included in the record. (*Id.*, pp. 33-35.) The arrest affidavit states that, "[u]pon searching the immediate area in the woods, where the defendant resisted arrest, a black in color gamo pellet pistol was found as well as a fixed blade knife in a leather sheath." (*Id.*, p. 35.) Additionally, the arrest affidavit contains a form section with an entry stating "weapon seized." (*Id.*, p. 33.) The letter "N" is written next to this entry. (*Id.*, p. 33.)

Sloan fails to show that the state court unreasonably denied his claim under *Strickland*, despite any confusion between a police report and an arrest affidavit. As stated, counsel did cross-examine Deputy Fisher about prior omission or inconsistent statements

about the knife. Although the arrest affidavit states that the "fixed blade knife in a leather sheath" was found, counsel questioned Deputy Fisher about whether the knife was still in the sheath when it was found, and Deputy Fisher testified to how the knife and sheath were recovered. And while the arrest affidavit shows an "N" next to a form entry for "weapon seized," suggesting that no weapon was seized, this was likely a simple typographical error considering the other evidence and the description of the knife within the arrest affidavit itself. Similarly, even though the arrest affidavit did not mention Sloan brandishing a knife, Deputy Fisher already agreed he made an omission from his report, where he failed to state that Sloan had taken an aggressive stance toward him.

Sloan has not shown that trial counsel performed deficiently for not cross-examining Deputy Fisher with the arrest affidavit, or that there is a reasonable probability of a different outcome had counsel done so. As Sloan does not show that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination, he is not entitled to relief on Ground Five.

Even assuming that the state court's order was based on an unreasonable determination of fact because the state court misapprehended whether counsel cross-examined Deputy Fisher with the arrest affidavit instead of only the police report and thus that Sloan is entitled to de novo review of his claim, relief is not warranted. *See Daniel v. Comm'r, Ala. Dep't of Corr.*, 822 F.3d 1248, 1260 (11th Cir. 2016) ("Once a federal court

determines that a state court decision is unreasonable under § 2254(d), '[the court is] unconstrained by § 2254's deference and must undertake a de novo review of the record.' " (quoting *Adkins v. Warden, Holman CF*, 710 F.3d 1241, 1255 (11th Cir. 2013))). Even under de novo review, Sloan fails to show entitlement to relief on his claim of ineffective assistance of counsel.  As addressed, counsel cross-examined Deputy Fisher about his prior inconsistencies and omissions concerning the knife and whether Sloan acted aggressively while holding the knife, as well as whether the knife was in the sheath when it was recovered. Therefore, Sloan fails to show a reasonable probability of a different outcome at trial had counsel used the arrest affidavit specifically in cross-examining Deputy Fisher.

Finally, in the caption of Ground Five, Sloan identifies a different claim of ineffective assistance of trial counsel. He states that counsel was ineffective for not renewing an "objection to strike tainted jury panel" and then "bolstered . . . prejudicial statements and admitted Petitioner's guilt . . . ." (Doc. 1, p. 12.) But it appears that Sloan listed this claim in error, as the argument in Ground Five clearly concerns the claim that trial counsel was ineffective for not cross-examining Deputy Fisher with his prior written statements. (*Id.*, pp. 12-13.) The Response notes this discrepancy and states that the claim's inclusion in the caption appears to be an error, and Sloan does not address this matter in his reply. (Doc. 11, p. 14 n.5.) Accordingly, the Court construes the claim of ineffective assistance of trial counsel for not renewing an objection, bolstering prejudicial statements, and

30

admitting Sloan's guilt as having been raised in error. Even if Sloan intended to raise the claim, it is denied. Sloan offers no argument in support of such a claim and therefore does not show that he is entitled to relief.

## F. Ground Six

Sloan argues that the prosecutor violated *Giglio v. United States*, 405 U.S. 150 (1972) by presenting Deputy Fisher's false testimony that was contrary to his prior arrest affidavit and arrest report. Sloan's claim is based on the same parts of Deputy Fisher's testimony described in Ground Five. (Doc. 1, p. 14.) The state court rejected Sloan's argument that Deputy Fisher's testimony was false, finding that such inconsistencies "do[ ] not automatically amount to perjury" and noting that counsel cross-examined Deputy Fisher about such inconsistencies. (Doc. 12-2, Ex. R, p. 31.)

Sloan does not show that the state court unreasonably denied his claim. "To prevail on a *Giglio* claim, a [defendant] must establish that (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material *i.e.*, that there is any reasonable likelihood that the false testimony could have affected the judgment." *United States v. Stein*, 846 F.3d 1135, 1147 (11th Cir. 2017) (quoting *Ford v. Hall*, 546 F.3d 1326, 1331-32 (11th Cir. 2008)). Trial testimony that is inconsistent with a witness's prior statement is not necessarily false. *See Stein*, 846 F.3d at 1149 ("[I]t is well-established that 'a prior statement that is merely

inconsistent with a government witness's testimony is insufficient to establish prosecutorial misconduct.' " (quoting *United States v. McNair*, 605 F.3d 1152, 1208 (11th Cir. 2010))); *see also United States v. Horner*, 853 F.3d 1201, 1206 (11th Cir. 2017) (analyzing a *Giglio* claim and stating that "[p]erjured testimony 'must be given with the willful intent to provide false testimony and not as a result of a mistake, confusion, or faulty memory.' " (quoting *United States v. Singh*, 291 F.3d 756, 763 (11th Cir. 2002))).

Although Deputy Fisher's recollection of events when he testified at trial did not match his earlier statements precisely, that discrepancy is not enough to show that his trial testimony was false for purposes of establishing a *Giglio* violation. Sloan does not establish that Deputy Fisher willfully intended to provide false testimony. *See id.* Sloan does not show that the state court's ruling was contrary to or involved an unreasonable application of clearly established federal law. Nor does he show that it was based on an unreasonable factual determination. He is not entitled to relief on Ground Six.

## V.   <u>CERTIFICATE OF APPEALABILITY</u>

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Instead, a district court or court of appeals must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a COA, Sloan must show that

reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Sloan has not made the requisite showing. Finally, because Sloan is not entitled to a COA, he is not entitled to appeal in forma pauperis.

It is therefore **ORDERED** that Sloan's Petition for Writ of Habeas Corpus, (Doc. 1), is **DENIED**. The **CLERK** is directed to enter judgment against Sloan and in Respondent's favor and to **CLOSE** this case.

**ORDERED** in Ocala, Florida, on September 20, 2023.

Kathryn Kimball Mizelle
United States District Judge